| | |
|---|---|
| SHARON MEYER, CARLOS BEAUFRAND, CRYSTAL MARTIN, and MARY ANN OLSZEWSKI, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br> vs. <br><br> ALLIED INTERSTATE, LLC, <br><br> Defendant. | Case No.: 17-cv-1106 <br><br> **AMENDED CLASS ACTION COMPLAINT** <br><br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Sharon Meyer is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff Carlos Beaufrand is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5. Plaintiff Crystal Martin is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

6. Plaintiff Mary Ann Olszewski is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

7. Each Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from him or her a debt allegedly incurred for personal, family or household purposes.

8. Defendant Allied Interstate, LLC ("Allied Interstate") is a Minnesota limited liability company with its principal place of business located at 12755 Hwy 55, Suite 300, Plymouth, MN 55441.

9. Allied Interstate is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

10. Allied Interstate is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. Allied Interstate is a debt collector as defined in 15 U.S.C. § 1692a.

## *Meyer Claims*

11. On or about October 12, 2016, Allied Interstate mailed a debt collection letter to Plaintiff Meyer regarding an alleged debt owed to "SYNCHRONY BANK" ("Synchrony"). A copy of this letter is attached to this Complaint as Exhibit A.

12. Upon information and belief, the alleged debt referenced in Exhibit A is an alleged credit card account, which Plaintiff Meyer opened and used only for personal, family, or household purposes.

13. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

14. Upon information and belief, Exhibit A is a form debt collection letter used by Allied Interstate to attempt to collect alleged debts.

2

15. Exhibit A is the first letter that Allied Interstate sent to Plaintiff regarding the Synchrony account identified in Exhibit A.

16. Exhibit A contains the following statement:

We are a debt collection company and SYNCHRONY BANK has contracted with us to collect the debt noted above. Please refer to the enclosed Account Listing for detail regarding your account(s).

17. The "enclosed Account Listing," included with Exhibit A, states:

Account Listing

| Client | Principle Balance | Interest Placed | Rate | Added | Fees | Collection Costs | Amount Owed |
|---|---|---|---|---|---|---|---|
| XXXXXXXXXXXX5544 | $1367.17 | $0.00 | 0.000 % | $0.00 | $0.00 | $0.00 | $1367.17 |
| Totals | $1,367.17 | $0.00 | | $0.00 | $0.00 | $0.00 | $1,367.17 |

18. The representation in Exhibit A that the "Amount Owed" is the same as the "Principle [*sic*] Balance" is false, misleading and confusing to the unsophisticated consumer.

19. The interest rate is also not "0.000%."

20. The alleged debt is a credit card account. Upon information and belief, the debt will accrue interest, likely at a default or penalty rate between 20 and 30 percent or possibly more, between the date listed on Exhibit A and the date Plaintiff would make a payment on the alleged debt.

21. Synchrony may also assess late fees on the account.

22. The unsophisticated consumer understands that interest and fees are routinely added to delinquent (allegedly) credit card accounts, and would be confused as to why the interest values in the Account Listing are zero.

23. Exhibit A fails to state the amount of the debt in a non-confusing manner.

3

24. The unsophisticated consumer could not determine from <u>Exhibit A</u> what the balance on the date of the letter actually is, and would be confused by the representations that no interest is accruing.

25. The unsophisticated consumer could send a check for the balance and would not know whether he had sent enough money to actually resolve the account, due to the possibility that Allied Interstate or Synchrony had added interest or other charges to the settlement amount.

26. Moreover, the Account Listing also falsely indicates that "Collection Costs" may be added to the debt.

27. Any purchases made with a personal credit card account were "consumer credit transactions" under the WCA, Wis. Stat. §§ 421-427.

28. Wis. Stat. § 421.301(10) defines a "consumer credit transaction":

> a consumer transaction between a merchant and a customer in which real or personal property, services or money is acquired on credit and the customer's obligation is payable in installments or for which credit a finance charge is or may be imposed, whether such transaction is pursuant to an open-end credit plan or is a transaction involving other than open-end credit. The term includes consumer credit sales, consumer loans, consumer leases and transactions pursuant to open-end credit plans.

29. Credit card transactions are, by definition, "transactions pursuant to open-end credit plans." Wis. Stat. § 421.301(27)(a).

30. The WCA specifically prohibits the attachment of collection fees or collection costs and other "default charges" on consumer credit transactions, even if the fee is separately negotiated. Wis. Stat. § 422.413(1) provides:

> no term of a writing evidencing a consumer credit transaction may provide for any charges as a result of default by the customer other than reasonable expenses incurred in the disposition of collateral and such other charges as are specifically authorized by chs. 421 to 427.

*See also Patzka v. Viterbo College*, 917 F. Supp. 654, 659 (W.D. Wis. 1996).

4

31. Neither Wis. Stat. § 422.202, entitled "Additional charges," nor any other section of the WCA, lists collection costs as a permissible fee a creditor may charge in connection with a consumer credit transaction.

32. Because credit card transactions are consumer credit transactions, Exhibit A falsely states or implies that Allied Interstate has a right to add collection costs to the debt.

33. Even if a provision of any agreement between Plaintiff and the original creditor would purport to permit Allied Interstate to impose a collection fee, the WCA prohibits such charges. Wis. Stat. § 421.106(1) ("Except as otherwise provided in chs. 421 to 427, a customer may not waive or agree to forego rights or benefits under chs. 421 to 427."); *See also Lox v. CDA, Ltd.*, 689 F.3d. 818 (7th Cir. 2012) (false representation that attorney fees would be added when they could not be, violated 1692e).

34. Plaintiff Meyer was confused by Exhibit A.

35. Plaintiff Meyer had to spend time and money investigating Exhibit A, and the consequences of any potential responses to Exhibit A.

36. Plaintiff Meyer had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit A.

### *Beaufrand Claims*

37. On or about March 18, 2017, Allied mailed a debt collection letter to Plaintiff Beaufrand regarding an alleged debt owed to "Synchrony Bank" ("Synchrony"). A copy of this letter is attached to this Complaint as Exhibit B.

38. The alleged debt referenced in Exhibit B was a Walmart branded credit card account, and the alleged debt was incurred for personal, family, or household purposes.

5

39. Upon information and belief, Exhibit B is another form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

40. Upon information and belief, Exhibit B is a form debt collection letter used by Allied to attempt to collect alleged debts.

41. Exhibit B was the first letter Allied sent to Plaintiff regarding this alleged debt.

42. Allied Interstate's letter as a whole is confusing and misleading to the unsophisticated consumer.

43. Exhibit B states:

> Total Account Balance: $1,438.00
> Amount Now Due: $240.00

44. Exhibit B also states:

> As of the date of this letter, the Total Account Balance is $1,438.00 and the Amount Now Due is $240.00. Because the creditor continues to assess interest on the debt, the amount due on the day you pay may be greater. Hence, if you pay the Amount Owed shown above, an adjustment may be necessary after we receive your payment, in which event we will inform you of any remaining balance. To make a payment, please telephone us at 866-875-4891 or mail your

45. Exhibit B is confusing to the unsophisticated consumer. It is unclear whether Allied Interstate is collecting the entire $1438.00 balance or just the $240.00 that is represented as being the amount required to get the account out of delinquency. Both amounts are an "Amount Owed" to Synchrony, but it is facially unclear which amount Allied is attempting to collect.

46. It is not unusual for banks to hire a debt collector to collect only the "past due" amount, i.e. missed payments and fees, of a credit card balance rather than the whole balance. But letters like Exhibit B would confuse the consumer, who cannot know whether the debt collector is only collecting the alleged arrears or whether Synchrony has accelerated the entire balance.

6

Case 2:17-cv-01106-LA    Filed 10/26/17    Page 6 of 19    Document 6

47. The Seventh Circuit held in *Barnes v. Advanced Call Ctr. Techs., LLC*, 493 F.3d 838, 840 (7th Cir. 2007), that "only the past due amount, the amount owed [to the debt collector], can be the 'amount of the debt' under § 809(a)(1)." Whichever number Allied is truly collecting, it need only state that amount in the letter.

48. The different amounts on Exhibit B render Exhibit B confusing to the unsophisticated consumer, who would not be able to determine, or would be confused as to, which amount Allied was actually attempting to collect.

49. Plaintiff Beaufrand was confused by Exhibit B.

50. Plaintiff Beaufrand had to spend time and money investigating Exhibit B, and the consequences of any potential responses to Exhibit B.

51. Plaintiff Beaufrand had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit B.

### *Martin Claims*

52. On or around October 29, 2016, Allied mailed a debt collection letter to Plaintiff Martin regarding an alleged debt owed to "Synchrony Bank" ("Synchrony"). A copy of this letter is attached to this Complaint as Exhibit C.

53. The alleged debt referenced in Exhibit C was a Walmart branded credit card account, and the alleged debt was incurred for personal, family, or household purposes.

54. Exhibit C is another form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

55. Upon information and belief, Exhibit C is a form debt collection letter used by Allied Interstate to attempt to collect alleged debts.

7

56. Exhibit C was the first letter Allied Interstate sent to Plaintiff Martin regarding this alleged debt.

57. Exhibit C lists an Account Number ending in "6515."

58. Exhibit C also states:

> Amount Owed: $1,207.00

59. Exhibit C also states:

> As of the date of this letter, the Amount Owed is $1,207.00.

60. Exhibit C contains no additional indication of a separate "Amount Now Due" or any other balance on the account.

61. Less than one month after Plaintiff Martin received Exhibit C from Allied Interstate, on or around November 25, 2016, Walmart mailed a billing statement to Plaintiff regarding the same account. A copy of this statement is attached to this Complaint as Exhibit D.

62. Exhibit D, just like Exhibit C, lists an account number ending in "6515."

63. Exhibit D lists a "New Balance" of $1,264.93, which is similar to, though slightly higher than, the "Amount Owed" of $1,207.00 listed in Allied Interstate's collection letter, Exhibit C.

64. Additionally, Exhibit D lists a "Previous Balance" of $1,207.37. Upon information and belief, this figure represents the actual balance of the account at the time Allied Interstate sent Exhibit C to Plaintiff Martin.

65. Furthermore, Exhibit D lists a "Total Minimum Payment Due" of $300.00. The due date provided for this payment is listed as 12/19/2016.

66. Allied Interstate's collection letter, Exhibit C, is thus false and misleading as to the amount of the debt owed to the creditor.

8

67. Exhibit D shows that only $300.00, and not $1,207.37, is actually "due" at the time Allied sent Exhibit C. *See Machnik v. RSI Enters.,* No. 17-CV-864, 2017 U.S. Dist. LEXIS 160772 *5-6 (E.D. Wis. Sep. 29, 2017):

> the letter variously refers to that sum as being "owing" and as being "due." In the context of a debt, "owing" an amount is distinguishable from the amount "due." For example, a debtor might "owe" a certain amount on a loan, but only a portion of that amount will be "due" at a particular time.

68. Exhibit D states that the "Previous Balance" of Plaintiff's account $1,207.37" but Exhibit B, the debt collection letter EGS sent on or about April 28, 2017, states that the "Total Account Balance" for the same account was $2,032.00.

69. Exhibit C also misstates the "Amount Owed" by truncating the cents from the balance. *See* 15 U.S.C. §§ 1692e(2)(a); 1692g(a)(1).

70. If Plaintiff were to pay $1,207.00, the payment would be short of the actual balance of the account.

71. It is not unusual for a consumer to pay off what she thinks is the entire balance of a credit card debt, only to find out years later that the remainder has grown to hundreds or even thousands of dollars, due to compound interest and monthly late fees.

72. Plaintiff Martin was confused by Exhibit C-D.

73. Plaintiff Martin had to spend time and money investigating Exhibit C-D, and the consequences of any potential responses to Exhibit C-D.

74. Plaintiff Martin had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit C-D.

9

Case 2:17-cv-01106-LA    Filed 10/26/17    Page 9 of 19    Document 6

## Olszewski Claims

75. On or around November 12, 2016, Allied mailed a debt collection letter to Plaintiff Olszewski regarding an alleged debt owed to "Synchrony Bank" ("Synchrony"). A copy of this letter is attached to this Complaint as Exhibit E.

76. The alleged debt referenced in Exhibit E was a Blain's Farm & Fleet branded credit card account, and the alleged debt was incurred for personal, family, or household purposes.

77. Exhibit E is of the same form as Exhibit C, with the information specific to Plaintiff inserted by computer.

78. Exhibit E was the first letter Allied Interstate sent to Plaintiff Olszewski regarding this alleged debt.

79. Exhibit E lists an Account Number ending in "0211."

80. Exhibit E also states:

> Amount Owed: $3,783.00

81. Exhibit E also states:

> As of the date of this letter, the Amount Owed is $3,783.00.

82. Like Exhibit C, Exhibit E contains no additional indication of a separate "Amount Now Due" or any other balance on the account.

83. Just over a month after Plaintiff Olszewski received Exhibit E from Allied Interstate, on or around January 6, 2016, Synchrony mailed a billing statement to Plaintiff regarding the same account. A copy of this statement is attached to this Complaint as Exhibit F.

84. Exhibit F, just like Exhibit E, lists an account number ending in "0211."

10

85. Exhibit F lists a "New Balance" of $3,999.87, which is similar to, though slightly higher than, the "Amount Owed" of $3,783.00 listed in Allied Interstate's collection letter, Exhibit E.

86. Exhibit F also lists a "Total Minimum Payment Due" of $848.00. The due date provided for this payment is listed as 02/01/2017.

87. Allied Interstate's collection letter, Exhibit E, is thus false and misleading as to the amount of the debt owed to the creditor. Exhibit F shows that only $848.00, and not $3,783.00, is actually "due" at the time Allied sent Exhibit E. *See Machnik*, 2017 U.S. Dist. LEXIS 160772 *5-6:

> the letter variously refers to that sum as being "owing" and as being "due." In the context of a debt, "owing" an amount is distinguishable from the amount "due." For example, a debtor might "owe" a certain amount on a loan, but only a portion of that amount will be "due" at a particular time.

88. Allied Interstate's collection letter, Exhibit C, is thus misleading as to the amount actually being sought by the creditor.

89. Allied Interstate's collection letter, Exhibit E, is thus misleading as to the amount being sought by the creditor.

90. Plaintiff Olszewski was confused by Exhibit E-F.

91. Plaintiff Olszewski had to spend time and money investigating Exhibit E-F, and the consequences of any potential responses to Exhibit E-F.

92. Plaintiff Olszewski had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit E-F.

11

## *The FDCPA*

93. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

94. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

95. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

96. 15 U.S.C. § 1692e(2)(a) specifically prohibits "The false representation of— the character, amount, or legal status of any debt.

97. 15 U.S.C. § 1692e(10) specifically prohibits: "The threat to take any action that cannot legally be taken or that is not intended to be taken."

98. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

99. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

100. 15 U.S.C. § 1692g(a) requires a debt collector to disclose in the first written communication with the consumer, among other things, a non-confusing statement of the amount of the debt. 15 U.S.C. § 1692g(a)(1).

## COUNT I – FDCPA

101. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

102. Count I is being brought on behalf of Plaintiff Meyer.

103. The amount of the debt in <u>Exhibit A</u> is confusing.

104. There is no explanation as to why the interest rate on an alleged credit card account would be zero.

105. The unsophisticated consumer would not understand why Defendant and Synchrony were stating that no interest was being added to Plaintiff's account when Synchrony had recently been adding interest to the account at the contractual, default rate.

106. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(5), 1692e(10), 1692f and 1692g(a).

## COUNT II -- FDCPA

107. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

108. Count II is also being brought on behalf of Plaintiff Meyer.

109. The references in <u>Exhibit A</u> to "Collection Costs" are false, misleading and confusing.

110. Allied Interstate threatened to add collection costs to Plaintiff's debts when neither Allied Interstate nor the creditor is entitled to collection costs. The WCA prohibits Allied Interstate from adding collection costs to the debt.

111. Allied Interstate's misrepresentation of the amounts it would attempt to collect is an unfair and/or unconscionable method by which to try and collect an alleged debt.

112. As these statements are threatening and/or confusing to the unsophisticated consumer recipient so as to falsely imply that the creditor is entitled to receive a collection fee, they are an unfair and/or unconscionable method for attempting to collect a debt.

113. The unsophisticated consumer would be confused by the nebulous references in Allied Interstate's letter to "Fees," and "Non-Interest Charges" and would have no idea what those charges are, potentially could be, or whether they would be legitimate.

114. Defendant violated 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), 1692f and 1692f(1).

## COUNT III – FDCPA

115. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

116. Count III is brought on behalf of Plaintiff Beaufrand.

117. Allied represented the amount of the debt that Allied was attempting to collect in a confusing manner by stating multiple amounts that Allied was attempting to collect. Exhibit A.

118. The unsophisticated consumer would be confused as to whether Allied was attempting to collect only $240.00 or the total balance.

119. Defendant violated 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), 1692f and 1692f(1).

## COUNT IV – FDCPA

120. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

121. Count IV is brought on behalf of Plaintiff Martin.

122. Exhibit C misrepresents the amount of the debt by truncating the cents from the actual balance of the account.

123. Such conduct encourages consumers to fail to pay the full amount of the debt, leading to additional late fees and interest.

124. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692g(a)(1).

## COUNT V – FDCPA

125. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

126. Count V is brought on behalf of Plaintiffs Martin and Olszewski.

127. Exhibits C and E each misrepresent the amount of the debt.

128. By referencing only the "Amount Owed," which correlates to the total balance of the accounts in question, Exhibit C and Exhibit E are misleading to the unsophisticated consumer as to the amount being sought by the creditor.

129. Exhibits C and E each overstate and misrepresent the amount of the debt that is actually due at the time the letter was sent.

130. In fact, a large portion of the amount Allied represented to be the "Amount Owed" in Exhibits C and E was not "due" at the time Allied Interstate sent Exhibits C and E to Plaintiffs.

131. Exhibits D and F show that only the "Total Minimum Payment Due" was actually due when Allied Interstate sent Exhibits C and E to Plaintiffs.

132. The unsophisticated consumer receiving a letter in the form of Exhibit C or Exhibit E would falsely believe that Allied Interstate was entitled to collect the "Amount Owed."

133. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 1692g(a).

## CLASS ALLEGATIONS

134. Plaintiff brings this action on behalf of four proposed classes.

135. Class I consists of (a) all natural persons in the State of Wisconsin, (b) who were sent collection letters in the form represented by Exhibit A to the complaint in this action, (c) in

16

which the "interest rate" was stated as "0.000%" and (d) no interest was in the "Placed" or "Added" columns, (e) seeking to collect a personal credit card account debt (f) incurred for personal, family or household purposes (g) between August 9, 2016 and October 26, 2017, inclusive, (h) that was not returned by the postal service. Plaintiff Meyer is the designated representative for Class I.

136. Class II consists of (a) all natural persons in the State of Wisconsin, (b) who were sent an initial collection letter in the form represented by <u>Exhibit B</u> to the complaint in this action, (c) seeking to collect a debt, incurred for personal, family, or household purposes (d) between October 26, 2016 and October 26, 2017, inclusive, (e) that was not returned by the postal service. Plaintiff Beaufrand is the designated representative for Class II.

137. Class III consists of (a) all natural persons in the State of Wisconsin, (b) who were sent collection letters in the form represented by <u>Exhibit C</u> to the complaint in this action, (c) seeking to collect a debt, incurred for personal, family, or household purposes, (d) which misstates the "Amount Owed" to the creditor, (d) between October 26, 2016 and October 26, 2017, inclusive, (e) that was not returned by the postal service. Plaintiff Martin is the designated representative for Class III.

138. Class IV consists of (a) all natural persons in the State of Wisconsin, (b) who were sent collection letters in the form represented by <u>Exhibit C</u> and <u>Exhibit E</u> to the complaint in this action, (c) seeking to collect a debt, incurred for personal, family, or household purposes, (d) which listed only an "Amount Owed" which is different from the a minimum payment sought by the creditor, (d) between October 26, 2016 and October 26, 2017, inclusive, (e) that was not returned by the postal service. Plaintiffs Martin and Olszewski are the designated representatives for Class IV.

17

Case 2:17-cv-01106-LA   Filed 10/26/17   Page 17 of 19   Document 6

139. Each Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each Class.

140. There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether <u>Exhibits A, B, C, and E</u> violate the FDCPA.

141. Plaintiffs' claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

142. Plaintiffs will fairly and adequately represent the interests of the Class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

143. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

144. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs requests that the Court enter judgment in favor of Plaintiffs and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: October 26, 2017

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)

Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000 | (414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com